IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
4:11-CV-18-D

| MARUICE BROWN, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM AND** |
| | ) | **RECOMMENDATION** |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

In this action, plaintiff challenges the final decision of defendant Commissioner of Social Security ("Commissioner") denying his application for Supplemental Security Income benefits ("SSI") on the grounds that he is not disabled. The case is before the court on plaintiff's and the Commissioner's respective motions for judgment on the pleadings (D.E. 28, 31). Both parties filed memoranda in support of their respective motions (D.E. 29, 32) and plaintiff filed a reply memorandum (D.E. 34). The motions were referred to the undersigned Magistrate Judge for a memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (D.E. 33). For the reasons set forth below, it will be recommended that the Commissioner's motion be allowed, plaintiff's motion be denied, and the final decision of the Commissioner be affirmed.

## I. BACKGROUND

### A. Case History

Plaintiff filed an application for SSI benefits on 9 April 2008 alleging the onset of disability on 1 July 2005.[1] Transcript of Proceedings ("Tr.") 10. The application was denied

---

[1] Although plaintiff claimed disability back to 2005, the earliest SSI benefits can be paid is the month following the filing of the application. 20 C.F.R. § 416.335. Plaintiff had previously submitted applications for child's insurance benefits based on disability and SSI that were ultimately denied in a decision by an ALJ on 10 January 2007, which

initially (Tr. 65) and upon reconsideration (Tr. 66), and a request for hearing was timely filed (Tr. 86). On 24 March 2010, a video hearing was held before an Administrative Law Judge ("ALJ"). Tr. 10, 18-49. The ALJ issued a decision denying plaintiff's claim on 16 April 2010. Tr. 10-17. Plaintiff timely requested review by the Appeals Council. Tr. 5-6. The Appeals Council denied the request for review on 9 December 2010. Tr. 1-4. At that time, the decision of the ALJ became the final decision of the Commissioner. 20 C.F.R. § 416.1481. Plaintiff commenced this proceeding for judicial review on 4 February 2011, pursuant to 42 U.S.C. § 405(g). (*See In Forma Pauperis* Mot. (D.E. 1); Order Allowing Mot. (D.E. 4); Compl. (D.E. 5)).

B.   **Standards for Disability**

The Social Security Act ("Act") defines disability as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). The Act defines a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §1382c(a)(3)(D). "[A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage

---

is included in the record of this case. *See* Tr. 54-61 (Ex. B1A). Although the ALJ did not discuss this prior ruling in his decision, neither party has raised that as an issue, and it is apparent that the ALJ did consider it. *See, e.g.*, Tr. 10 (ALJ's statement that he reached his decision "[a]fter careful consideration of all the evidence"), 22 (admission of prior decision into evidence at hearing), 23 (reference to prior decision by plaintiff's counsel at hearing), 29 (same); *Melvin v. Astrue*, 602 F. Supp. 2d 694, 699-705 (E.D.N.C. 2009) (holding that discussion of findings in prior ALJ decision not required).

in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 1382c(a)(3)(B).

The disability regulations under the Act ("Regulations") provide the following five-step analysis that the ALJ must follow when determining whether a claimant is disabled:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. . . .
>
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 416.909, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. . . .
>
> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in [20 C.F.R. pt. 404, subpt. P, app. 1] ["listings"] and meets the duration requirement, we will find that you are disabled. . . .
>
> (iv) At the fourth step, we consider our assessment of your residual functional capacity ["RFC"] and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. . . .
>
> (v) At the fifth and last step, we consider our assessment of your [RFC] and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled. . . . .

20 C.F.R. § 416.920(a)(4).

The burden of proof and production rests with the claimant during the first four steps of the analysis. *Pass*, 65 F.3d at 1203. The burden shifts to the Commissioner at the fifth step to show that alternative work is available for the claimant in the national economy. *Id.*

In the case of multiple impairments, the Regulations require that the ALJ "consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. § 416.923. If a

3
Case 4:11-cv-00018-D Document 35 Filed 01/23/12 Page 3 of 15

medically severe combination of impairments is found, the combined impact of those impairments must be considered throughout the disability determination process. *Id.*

C. **Findings of the ALJ**

Plaintiff was 34 years old when he filed his application and 36 years old on the date of the hearing. Tr. 16 ¶ 6; 23. He did not complete high school. Tr. 16 ¶ 7 (finding respondent to have a limited education), 23 (plaintiff's attorney's statement at hearing that plaintiff did not finish high school); *see* 20 C.F.R. § 416.964(b)(3) (defining limited education generally as the seventh through eleventh grade level of formal education).

Applying the five-step analysis of 20 C.F.R. § 416.920(a)(4), the ALJ found at step one that plaintiff had not engaged in substantial gainful activity since the filing of his application. Tr. 12 ¶ 1. At step two, the ALJ found that plaintiff has the following medically determinable impairments that are severe within the meaning of the Regulations, 20 C.F.R. § 416.920(c): diabetes mellitus, hypertension, arthritis, gout, and obesity. Tr. 12 ¶ 2. At step three, however, the ALJ found that plaintiff does not have an impairment or combination of impairments that meets or equals one of the listings. Tr. 12 ¶ 3.

The ALJ determined that plaintiff has the RFC to perform a wide range of sedentary work.[2] Tr. 13 ¶ 4; 16 ¶ 4. He found plaintiff limited to having no foot controls; no climbing of ladders, ropes, or scaffolds; no more than occasional climbing of ramps or stairs; no more than frequent balancing (with a hand-held resistive device), stooping, crouching, kneeling, or crawling; and no exposure to poorly ventilated areas, moving machinery, or unprotected heights. Tr. 13 ¶ 4. At step four, the ALJ found that plaintiff had no past relevant work. Tr. 16 ¶ 5. At

---

[2] The Regulations define sedentary work as involving the lifting no more 10 pounds at a time. 20 C.F.R. § 416.967(a). Although the ALJ stated that plaintiff has the capacity to lift 20 pounds occasionally, the parties are in agreement, as is the court, that the ALJ's reference to lifting 20 pounds was inadvertent. (*See* Pl.'s Mem. 6; Comm.'s Mem. 10 n.3).

4

step five, the ALJ accepted the testimony of a vocational expert and found that there were jobs in the national economy existing in significant numbers that plaintiff could perform, including telephone order clerk, call-out operator, and escort vehicle driver. Tr. 16-17 ¶ 9. The ALJ accordingly concluded that plaintiff was not disabled. Tr. 17 ¶ 10.

## II. DISCUSSION

### A.   Standard of Review

Under 42 U.S.C. §§ 405(g) and 1383(c)(3), judicial review of the final decision of the Commissioner is limited to considering whether the Commissioner's decision is supported by substantial evidence in the record and whether the appropriate legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Unless the court finds that the Commissioner's decision is not supported by substantial evidence or that the wrong legal standard was applied, the Commissioner's decision must be upheld. *See, e.g., Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Perales*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla of evidence, but somewhat less than a preponderance. *Perales*, 402 U.S. at 401.

The court may not substitute its judgment for that of the Commissioner as long as the decision is supported by substantial evidence. *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (*per curiam*). In addition, the court may not make findings of fact, revisit inconsistent evidence, or make determinations of credibility. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979). A Commissioner's decision based

5

on substantial evidence must be affirmed, even if the reviewing court would have reached a different conclusion. *Blalock*, 483 F.2d at 775.

Before a court can determine whether a decision is supported by substantial evidence, it must ascertain whether the Commissioner has considered all relevant evidence and sufficiently explained the weight given to probative evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997). "Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator." *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983).

### B. Overview of Plaintiff's Contentions

Plaintiff contends that the ALJ's decision should be reversed on the principal grounds that (1) the RFC is not supported by substantial evidence and (2) the opinion of a treating physician of plaintiff was not accorded sufficient weight. The court will examine each ground in turn.

### C. RFC Determination

Plaintiff argues that the RFC determination is not supported by substantial evidence because the ALJ erroneously discounted his credibility and misstated the evidence. The court disagrees.

As noted, this court is not permitted to make credibility assessments, but must determine if the ALJ's credibility assessment is supported by substantial evidence. *Craig*, 76 F.3d at 589. The ALJ's assessment involves a two-step process. First, the ALJ must determine whether plaintiff's medically documented impairments could cause plaintiff's alleged symptoms. *Id.* at 594-95. Next, the ALJ must evaluate plaintiff's statements concerning those symptoms. *Id.* at 595. The ALJ's "'decision must contain specific reasons for the finding on credibility, supported

by the evidence in the case record.'" *Dean v. Barnhart*, 421 F. Supp. 2d 898, 906 (D.S.C. 2006) (quoting Soc. Sec. Ruling 96-7p, 1996 WL 374186, at *2 (2 July 1996)); *see also* 20 C.F.R. § 416.929 (setting out factors in evaluation of claimant's pain and other symptoms).

Here, plaintiff testified at the hearing that he was unable to work because of the swelling in his ankles and knees due to arthritis and gout. Tr. 27. He also testified that he falls asleep easily during the day because of his sleep apnea; he can sit for up to 30 minutes at a time and can walk for up to 10 minutes at a time; he uses a cane or crutches for walking; he lays in bed two to three hours a day; and he spends most of the day watching television. Tr. 34, 35, 36-37. The ALJ presented a summary of plaintiff's testimony in his decision. Tr. 14 ¶ 4.

In assessing plaintiff's allegations, the ALJ made the step-one finding that plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." Tr. 15 ¶ 4. At the second step of the credibility assessment, the ALJ found that plaintiff's testimony was not fully credible. He stated that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the . . . residual functional capacity assessment." *Id.*

The ALJ provided specific reasons for his credibility determination that are supported by substantial evidence of record. Tr. 15-16 ¶ 4. As to plaintiff's degenerative arthritis (located in his knees, arms, and wrists), the ALJ found that the radiological findings do not support the level of impairment plaintiff claimed, noting that "X-rays of the knees and left shoulder[3] were negative"; plaintiff has not required aggressive measures for symptom relief "such as narcotic medication, physical therapy, or injections"; and although plaintiff uses a cane, it was not prescribed by a treating physician. Tr. 15 ¶ 4. With respect to plaintiff's diabetes, the ALJ found

---

[3] The ALJ appears to be referring to the x-rays of plaintiff's left forearm on 2 March 2007 following an automobile accident, which were negative. *See* Tr. 14, 186. There does not appear to be any record of an x-ray of plaintiff's left shoulder in the record. To the extent the reference to plaintiff's shoulder is erroneous, the error is immaterial.

that plaintiff has been treated with oral medication and does not have any symptoms or signs of diabetic retinopathy, diabetic neuropathy, or peripheral artery disease. *Id.* In the case of plaintiff's hypertension, the ALJ found that the anti-hypertensive treatment regimen prescribed for plaintiff has controlled his condition, resulting in generally normal blood pressure readings, and he has not developed symptoms or signs of hypertensive retinopathy or cerebral ischema. Tr. 15-16 ¶ 4. Similarly, the ALJ found that plaintiff's gout was being treated with medication and that he is still able to ambulate despite his condition. Tr. 16 ¶ 4. The ALJ also found that there was no indication in the record that plaintiff was unable to perform his activities of daily living. Tr. 16 ¶ 4.

Moreover, it is apparent that the ALJ did give some weight to plaintiff's complaints. The ALJ found expressly that plaintiff's diabetes, hypertension, arthritis, gout, and obesity are severe impairments and that he is restricted to sedentary work, subject to significant limitations, rather than work at a higher exertional level. Indeed, the ALJ expressly rejected the two state agency physical RFC assessments of record finding that plaintiff could perform work at the light exertional level. Tr. 16 ¶ 4; 227, 244.

Plaintiff challenges the ALJ's credibility analysis, in part, on the grounds that the ALJ misstated the evidence regarding plaintiff's arthritis. He cites, for example, to the report on an x-ray showing bilateral spurring in plaintiff's knees. Tr. 217. But the report indicates there was only "minimal bilateral spurring, otherwise normal knees," and it is dated August 2004, well outside the period at issue. *Id.* In any event, this report certainly does not contradict the ALJ's finding that the radiological evidence fails to show the level of impairment plaintiff claims.

Plaintiff also challenges the finding that he was not prescribed narcotic medication for pain since he was prescribed Tramadol. Plaintiff appears to concede, though, that Tramadol is

not a narcotic drug, signifying that the ALJ did not err in stating that plaintiff was not receiving narcotic medication. (*See* Pl.'s Reply 1); *see generally* Tramadol, U.S. National Library of Medicine, http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0000960/ (last visited 23 Jan. 2012). Of course, to the extent that the Tramadol controlled plaintiff's pain, and the fact that it was repeatedly prescribed for him suggests that it was having some effectiveness, the pain would not be disabling. *See* Tr. 172 (plaintiff's prescription history); *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986) ("If a symptom can be reasonably controlled by medication or treatment, it not disabling."). In any event, plaintiff has not shown to be unsupported by substantial evidence the ALJ's broader finding that he was not prescribed more aggressive treatment, such as stronger medications, physical therapy, or injections.

As to the ALJ's finding regarding nonprescription of a cane for plaintiff, he cites to the reference in a 13 April 2008 office visit note by his treating physician at the time, Jennifer Roberson, M.D., that he used a cane to come onto and off the examination table. Tr. 192. But this observation by Dr. Roberson does not constitute a finding by her that plaintiff needed a cane to walk.[4]

As to his diabetes, plaintiff challenges as baseless the ALJ's finding that he did not have diabetic retinopathy. He cites to recommendations by Dr. Roberson that he have a diabetic eye examination. Tr. 219 (14 Apr. 2008), 247 (17 Oct. 2008). However, plaintiff points to no diagnosis by Dr. Roberson or any other physician that plaintiff has diabetic retinopathy. Moreover, although Dr. Roberson states in her 13 April 2008 office visit note that plaintiff complained that he was "having problems with glasses" and that his "vision is worse at night," she found his eyes to be "normal." Tr. 191, 192. In a visit several months later, on 20 July 2008,

---

[4] Interestingly, the note states that the cane was that of plaintiff's brother, who had come with him, not plaintiff's own cane. *See* Tr. 191, 192. The note therefore does not definitively establish that plaintiff had even obtained a cane of his own.

plaintiff reported "no vision problems."[5] Tr. 231. There is no evidence that any vision problem plaintiff may have had at any relevant time was disabling.

Plaintiff challenges the ALJ's finding that his gout did not prevent him from ambulating. However, he identifies no medical evidence establishing that he is unable to ambulate. In fact, some of the evidence upon which he himself relies shows that he is able to ambulate, albeit with the aid of a cane or crutch. (Pl.'s Mem. 8 (citing Tr. 34, 192); *see also* Tr. 36).

Similarly, although plaintiff challenges the ALJ's finding that he can perform activities of daily living, he relies primarily on his own statements that he lacks this ability. (Pl.'s Mem. 8 (citing Tr., *e.g.*, 33-37, 146)). Evidence supporting the ALJ's finding includes the two physical RFC assessments finding that plaintiff can perform work at the light exertional level. Tr. 227 (28 May 2008), 244 (15 Jan. 2009). Aside from the opinions of Dr. Roberson, discussed in the next section, there is indeed scant evidence to support plaintiff's claim that he is as limited in his activities of daily living as he says.

Thus, the court concludes that the ALJ's credibility determination was lawful. He followed the requisite two-step procedure and relied on substantial evidence of record, not misstated evidence as plaintiff alleges.

This same body of substantial evidence supports the ALJ's RFC determination. In addition, the ALJ used the proper legal standards in determining plaintiff's RFC. The court concludes that the ALJ's RFC determination is lawful as well.

---

[5] Plaintiff subsequently developed an eye problem apparently unrelated to any diabetic retinopathy. Specifically, in October 2008, Dr. Roberson diagnosed plaintiff with conjunctivitis (sometimes referred to as pink eye) and prescribed eye drops for it, and he testified at the hearing that he continued to have it. Tr. 31-32, 247; *see generally* Conjunctivitis, U.S. National Library of Medicine, http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0002005/ (last visited 23 Jan. 2012).

## D. Treating Physician

Dr. Roberson served as plaintiff's primary care physician from October 2007 until October 2008. *See* Tr. 199, 248. In a letter dated 14 April 2008, she stated that plaintiff had several medical problems that rendered him unable to work:

> Mr. Brown has several chronic medical problems, including obesity, hypertension, type 2 diabetes, obstructive sleep apnea and gout. Mr. Brown is not able to work due to these conditions.

Tr. 219. In his decision, the ALJ found that "this opinion is inconsistent with and not supported by the medical evidence" and clearly accorded it no weight. Tr. 16 ¶ 4. Plaintiff contends that the ALJ erred by not giving Dr. Roberson's opinion controlling weight.[6] The court disagrees.

Opinions of physicians who have treated a claimant are generally accorded more weight than the opinions of physicians lacking a treatment relationship. 20 C.F.R. §416.927(d)(2). The reason is that the treating sources are likely to be those "most able to provide a detailed, longitudinal picture of . . . [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." *Id.* Indeed, the Regulations provide that opinions of treating physicians on the nature and severity of impairments are to be accorded controlling weight if they are well supported by medically acceptable clinical and laboratory diagnostic techniques and are not

---

[6] In his initial memorandum, plaintiff also argues that in an October 2007 progress note Dr. Roberson found him "'unable to work due to shortness of breath and joint pain,'" citing Tr. 199-200. (Pl.'s Mem. 9). But the language being quoted, found in Tr. 200, is a description of plaintiff's complaints, not findings by the examiner; the note was signed by someone other than Dr. Roberson; and it is dated 23 October 2006, not October 2007. This note does contain the opinion that plaintiff's obstructive sleep apnea with chronic shortness of breath (*i.e.*, dyspnea) was totally and permanently disabling. *See* Tr. 200. Plaintiff, though, does not refer to this opinion and appropriately so. There are no supporting findings provided for it; there is scant other supporting evidence for such an opinion, as otherwise discussed herein; and the opinion is on the ultimate issue of disability and thereby not entitled to any special weight due to its source, *see* 20 C.F.R. § 416.927(e)(1), (3). In his reply memorandum, plaintiff does not mention the progress note at Tr. 200. The other record cited by plaintiff, Tr. 199, is a note by Dr. Roberson, which relates to an October 2007 visit with plaintiff. However, it does not contain any finding like that quoted by plaintiff in his memorandum.

11

inconsistent with the other substantial evidence in the record. 20 C.F.R. § 416.927(d)(2); *see Craig*, 76 F.3d at 590; *Ward v. Chater*, 924 F. Supp. 53, 55-56 (W.D. Va. 1996); Soc. Sec. R. 96-2p, 1996 WL 374188, at *2 (2 July 1996). If the medical opinions of the treating source are not given controlling weight, the Regulations prescribe factors to be considered in determining the weight to be ascribed, including the length and nature of the treating relationship, the frequency of examination, the supportability of the opinions, their consistency with the record, and any specialization of the provider. 20 C.F.R. § 416.927(d)(2)-(6). Significantly, an ALJ's decision "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. R. 96-2p, 1996 WL 374188, at *5; *see* 20 C.F.R. § 416.927(f)(2)(ii).

Similarly, the opinions of physicians who examine a claimant are generally entitled to more weight than those of physicians who did not perform an examination. *See* 20 C.F.R. § 416.927(d)(1), (2); Soc. Sec. R. 96-6p, 1996 WL 374180, at *2 (2 July 1996). The weight ultimately attributed to medical opinions of nonexamining sources depends on the same factors, to the extent applicable, used to evaluate the medical opinions of treating sources. 20 C.F.R. § 416.927(f). In addition, if applicable, the status of the nonexamining source as a state agency medical consultant or medical expert used by the Commissioner is to be considered. 20 C.F.R. § 416.927(f). Unless the treating source's medical opinions are given controlling weight, the ALJ must explain in his decision the weight given to the opinions of nonexamining sources as he must do for treating source opinions. 20 C.F.R. § 416.927(f)(2)(ii).

The court finds the ALJ's treatment of Dr. Roberson's opinion to be lawful. The ALJ's decision makes clear that he bases his evaluation of Dr. Roberson's opinion on the same factors that underlie his determination regarding plaintiff's credibility. Tr. 16 ¶ 4. As previously discussed, substantial evidence of record supports the factors cited by the ALJ. Dr. Roberson's opinion on disability also contradicts the determination of the state agency consultants that plaintiff could do work at the light exertional level. Tr. 227, 244.

In addition, although Dr. Roberson treated plaintiff for just over a year, the record documents only five office visits by plaintiff with her. *See* Tr. 199 (8 Oct. 2007), 191-92 (13 Apr. 2008), 234-35 (18 July 2008), 231-33 (20 July 2008), 245-47 (17 Oct. 2008)[7]; 20 C.F.R. § 416.927(d)(2)(i). She issued the letter stating her opinion after the first two visits. Lastly, Dr. Roberson's opinion is arguably an opinion on the ultimate issue of disability, which is reserved to the Commissioner, and, as such, is not entitled to any special weight based on its source. *See* 20 C.F.R. § 416.927(e)(1), (3).

Plaintiff argues that the letter by Dr. Roberson itself sets out findings that compel that her opinion be accorded controlling weight. In fact, though, the statements in the letter do little to explain why plaintiff is purportedly unable to work. For example, as to plaintiff's sleep apnea, she states that he was not then being treated by a CPAP (*i.e.*, continuous positive airway pressure) machine (because he could not afford one) and that without treatment he was at risk of death at an early age. Tr. 219. These facts do not show how plaintiff's sleep apnea limits his ability to perform basic work activities.[8]

---

[7] Full or partial duplicates of these records are found, respectively, at Tr. 270, 255-57, 253-54, 250-52, 248-49.

[8] In his reply memorandum, plaintiff contends that the ALJ erred by not expressly stating his analysis of plaintiff's sleep apnea. (Pl.'s Reply 2). The ALJ, though, makes repeated reference to plaintiff's sleep apnea in reviewing plaintiff's testimony and medical history, and it is referenced throughout the evidence of record, all of which the ALJ sates he considered. *See* Tr. 10, 14. Moreover, the express determinations the ALJ did make regarding the credibility of plaintiff's complaints, which included sleepiness due to his apnea, and the weight due Dr. Roberson's

13
Case 4:11-cv-00018-D Document 35 Filed 01/23/12 Page 13 of 15

She also states that plaintiff needs "a diabetic eye exam and new glasses, which he has not had in several years and has noticed his eyesight has worsened." *Id.* But the need for an eye examination and new glasses hardly explains plaintiff's purported inability to work. Further, the alleged worsening of plaintiff's eyesight is a complaint by plaintiff, not a finding by Dr. Roberson. The letter does not indicate the severity of the deficiency in plaintiff's eyesight, including specifically the extent to which, if any, it would affect his ability to work.

The letter also notes that if plaintiff's "diabetes and hypertension are not treated optimally, these conditions could continue to cause possible end-organ damage and death." Tr. 219. This statement amounts to a projection of plaintiff's future condition if he does not receive adequate treatment and, again, does not relate to his ability to work at the time the letter was written. It is not surprising that the letter is forward looking because its central focus appears to be to support a request by plaintiff for Medicaid coverage. For this and the other reasons stated, the court rejects plaintiff's challenge to the ALJ's treatment of Dr. Roberson's opinion.

### III. CONCLUSION

For the foregoing reasons, the court finds that the final decision by the Commissioner applied the correct legal standards and is supported by substantial evidence. IT IS THEREFORE RECOMMENDED that the Commissioner's motion for judgment on the pleadings be ALLOWED, plaintiff's motion for judgment on the pleadings be DENIED, and the final decision of the Commissioner be AFFIRMED.

---

opinion, which relied in part on plaintiff's sleep apnea, make clear the ALJ's view that plaintiff's sleep apnea did not impose significant limitations on his ability to perform basic work activities. *See Veney v. Astrue*, No. 3:07CV00004, 2007 WL 2688420, at *2 (W.D. Va. 11 Sept. 2007) (report and recommendation by magistrate judge) (finding that plaintiff failed to show that sleep apnea limited her ability to perform basic work activities), *adopted*, 539 F. Supp. 2d 841 (2008). On the record of this case, the court does not believe further exposition by the ALJ of his analysis regarding plaintiff's sleep apnea was required.

IT IS ORDERED that the Clerk send copies of this Memorandum and Recommendation to counsel for the respective parties, who have 14 days, or such other period as the court directs, to file written objections. Failure to file timely written objections bars an aggrieved party from receiving a de novo review by the District Judge on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Judge.

This, the 23rd day of January 2012.

James E. Gates
United States Magistrate Judge